Judge Silverman, are you still with us? Yes, I am, Judge Clutcher. Thank you. So we are all ready. The last case is Wakefield v. Parker, and counsel, when you're ready. Thank you, Your Honors. Good morning, Your Honors. My name is Stephen Renick. I represent appellant and cross-appellee Officer Al Parker. If I may, I'd like to reserve 10 minutes of my time for rebuttal and to respond to the cross-appeal. Okay, we'll try to help you keep track of your time, but you try also. Thank you, Your Honor. The basic issue here is that when we look at what the jury necessarily found in reaching its verdict, we're able to apply law to those facts that make it impossible for the verdict against Officer Parker to stand. The jury necessarily found that there was a reasonable cause to use. It was objectively reasonable for force to be used during this incident. Not necessarily. I don't think so. I think the jury could have concluded that force wasn't necessary. Period. The problem that I have with that is then how can you possibly reconcile a finding like that with the defense verdict in favor of Officer Kogler? That his force wasn't excessive. But then states might basically... Well, I know your argument, but I got to say, I think it's based on a faulty premise. I think a jury could come out with a result that said that the force wasn't necessary theoretically because nothing was necessary. The application of any force is by definition excessive, but in common sense terms, that's not so. And so the jury could say, well, what he did, it was de minimis. It doesn't count. That's not excessive. So Kogler gets off. Why couldn't the jury have made that kind of calculation? I don't think it's consistent with even the plaintiff's version of the... It doesn't have to be. The jury's not required to sign on. This isn't baseball arbitration where you've got to take his version or his version. The jury's allowed to sit there and mix it all up and make internal compromises that maybe aren't logical to those of us sitting outside the room, but they can come up with all sorts of things. And the argument seems premised on something that I think is factually not necessarily the case. And I didn't see any legal support for the proposition. You're allowed to derive those kind of inferences and build a whole case on it. I mean, you like part of the verdict. You don't like part of the verdict. I don't think you can take the part you like and use that to impeach the part you don't like. I don't think that's what we're trying to do. I think the whole point was we were trying to reconcile the verdict to explain both parts and not say we like this, we don't like this, but what is the logical basis on which the jury could have reached both elements. Yeah, but you know, we've got case law that says inconsistent verdicts stand. So I think you'll do better if you just tell us why the evidence on the facts of the case in front of us don't produce the verdict of which you're complaining. I don't mean to sound flippant, but I really don't feel comfortable simply abandoning this without at least taking a little further stab at it. Well, I'll assure you, you've not persuaded at least one judge. I just don't think you can do it. I don't think you can do it legally and I don't think you can do it factually. So tell me why it is my factual scenario can't fit, why the jury couldn't have decided that the force wasn't necessary but the force applied by Officer Kugler wasn't excessive because he didn't hurt anything. But the plaintiff's own testimony is that he was injured by the grappling on the ground. The jury doesn't have to believe every part of any given witness. The jury can pick and choose. The evidence shows that Kugler put handcuffs on Mr. Wakefield, correct? Yes. It also, the evidence was that he was part of the group of men that was on top of him and wrestling him into submission. That's everybody's testimony. And does the evidence show that Officer Kugler tasered Mr. Wakefield? No. Okay. Twice? Well, the problem that I then am faced with, obviously, is if we take the facts as being there's no appropriate use of force permitted at all, then it doesn't really matter whether it's a taser, a baton, a shotgun, anything. Obviously, if he's not allowed to use any level of force, whatever he did was wrong But I think you're misunderstanding the very verdict that you're relying on. That is to say it's pretty clear that the jury decided there is some force that's excessive and there's other force that's not excessive. Kugler's not excessive. Parker is excessive. That's what they decided. I agree. And so the question is not force or not force. The question is excessive force. I agree. And maybe I'm not presenting my argument well, and I do apologize. I think it's a clever construct. But ultimately, you've got to go back to the question of did the evidence, was it sufficient to support the conclusion that your client's use of force was excessive? And all of the arguments that you've offered up trying to build on the premise that you draw out of the verdict, it's really the same stuff. Let's focus on that evidence and not try to use the verdict to say, well, it must have been concluded that some force was necessary. It might well have been. Then we have to face the question of, okay, was your client's use of force excessive? Did the evidence compel a conclusion to the contrary? Does this speak to the evidence? Okay. Well, part of the problem I have then is what is the evidence? Typically, in a situation like this, if we dropped Officer Kogler completely out of the picture, if this was a one-on-one, whatever, you take the evidence in the light most favorable to the verdict, which would be the plaintiff's testimony. And the plaintiff's testimony, again, is basically no force was appropriate under any circumstances at all, which brings me back to the it doesn't matter what you did. Well, the plaintiff's testimony is not legal conclusions. The plaintiff's testimony is the following things happened. Right. The issue, as I see it, is if there's an incident going on here where some amount of force is appropriate to be used by some officer, some public official, since we're dealing with firefighters and paramedics, I agree the issue was the force excessive. If grappling with him, if physically interacting with him was not excessive force, and we've got many cases that talk about the potential dangers involved in that, broken bones, scrapes, bruises, concussions. The plaintiff himself testified that as a result of this incident,  it's then necessary to compare the use of force that Officer Parker used, which was the taser. And as Officer Parker testified, from his perspective, if he was going to use any force at all, he had four choices. He could join the pile, he could use his baton, he could use his pepper spray, or he could use his taser. And if it's appropriate for him to have used any force at all, which is why I started where I started, there's no evidence and no case law that says his choice of a taser, as opposed to, in particular, doing what Officer Kogler and all the other people were doing, was excessive in comparison to that. The only testimony, the only evidence that was used, is that the use of the taser itself was a lower level of force, had less impact on the plaintiff than physically grappling with him. According to the plaintiff himself, the only effect he had as a result of the taser were the two five-second jolts of electricity and a small scar where the dart entered his skin. His own testimony as to the injuries he suffered from the grappling were, and I have, I believe I quoted his testimony exactly in the brief, but paraphrasing, it was bruises, he was banged up. I don't believe that on whatever sort of scale we might use, we're talking about things that are, where the language that plaintiff's counsel used was a different order of magnitude. Pepper spray that would have a 30-minute impact, that might be a different order of magnitude. A baton that might crush a skull, break a bone, that might be a different order of magnitude. Mr. Remick, let me ask you this, what was the rationale for not just letting him up, taking him off the board, letting him go about his business? The testimony from the various defense witnesses were twofold. One, they didn't know what was happening and they were concerned about him and trying to get him under control so that he wouldn't hurt himself. The other aspect was that he was flailing about in a way that physically could have injured them. But I mean, he wasn't under arrest. Correct. So if he says, I don't want to be strapped to a board, I don't understand why they didn't just, instead of contemplating a baton or a taser or firing warning shots or whatever else was on the table, why they didn't just contemplate letting him go? Well, part of the problem here is that that wasn't an issue that was faced by Officer Parker. There again is no dispute that Officer Parker wasn't over there. He wasn't part of the group that was tending medically to Mr. Wakefield that was strapping him in or that was dealing with his reaction to being strapped in, whatever may have precipitated that. He was, by every account, off elsewhere doing, I think he was using a roll of tape to measure the points of impact for the auto accident that had brought everybody there. By the time he became aware of anything, there was a struggle going on. He didn't know how that had happened, whether the firefighters, the paramedics should have simply backed off and let Mr. Wakefield up. It's a different issue, but the verdict wasn't entered against them. They weren't even defendants at that point. The question is, given the information that Officer Parker had, which was he turns around and sees a struggle going on, including his partner or fellow officer attempting apparently to subdue and arrest this person. He doesn't know what happened. Did it suddenly turn out that the man had a warrant and didn't want to be arrested? Had he pulled the gun? Who knew? All Officer Parker knew is that there was this struggle going on. That's, of course, Parker's testimony. That's not Wakefield's testimony. Wakefield's testimony is that the grappling occurred before Officer Parker got involved. Wakefield's testimony, as I understand it, is he says to Parker, I'm feeling claustrophobic. I would like to be let up. Officer Parker says no. I mean, that's his testimony. That's part of it. And we have a jury verdict. So we have to believe the evidence that the jury is entitled to believe that favors the person who wins the jury verdict. But again, if the jury is not, the same argument would apply to Officer Kobler. But I'm not sure how we can avoid that. It may be that the jury was wrong as to Officer Kobler. Part of our problem is the law permits inconsistent verdicts, but we can't even tell which part is inconsistent. It may be that he should have been found liable. When we say that the law permits inconsistent verdicts, I think that's a little bit of a misnomer, because what the law, as I understand it, requires is that you try to harmonize the verdict before you come to the conclusion that it's truly inconsistent. And if you take that first step, is there a way to harmonize what the jury presumably found factually that would support both the... But you don't really want to harmonize the verdict, because you want to find something out of the verdict with regard to Kobler that undermines the verdict as regard to Parker. I mean, I think they can be harmonized, but even if you say they can't, it doesn't give us any reason to believe why the verdict as to your client was the one that was wrong and should be set aside. Well, no, but I'm not saying that. I'm saying the verdict is wrong as to Officer Parker as a matter of law, not because it's internally inconsistent factually from the jury's perspective. If you harmonize the verdict the way I'm saying it, neither part is wrong in that sense. The jury evaluated the evidence and came to the conclusion it came to, and a different part of our argument explains why they may have come to that. But if the jury concluded that some use of force was appropriate and that use by Officer Kobler was not excessive, that doesn't say that part of the decision is wrong. It then follows logically that the jury concluded that, while some use of force may have been appropriate, Officer Parker's use of force, the manner in which he used the force that in a global sense was appropriate, was excessive. There's nothing... They decided he was a latecomer, that Kobler and the people standing with him had to do something, but by the time Parker shows up, you don't need somebody else piling on in some fashion. I don't know that that's what actually happened. All I'm saying is that we give so much respect to jury verdicts that in harmonizing sometimes we accept propositions that may cause a neutral observer to scratch his head. I'm not sure that we can get to the scenario that you've suggested from the facts. While it's true the jury may come up with anything it comes up with, perhaps it's a legal fiction, but the fiction is that the jury takes the actual evidence and reaches conclusions based on the actual evidence as opposed to just saying, well, we're going to ignore everything and imagine what happened. That may be what actually happens, but... But of course there is a test to that, that is to say if the verdict is simply not supportable by the evidence, we can put it to one side or the judge can put it to one side. I mean, you make a motion for judgment as a matter of law, I mean, we can deal with that. And that's not this case. Right, well, again, my issue is that as far as I can see, the only way that it is consistent with the evidence that was presented, and even just, you know, is to say that the jury had to have concluded that some use of force was appropriate. Okay, I think we're familiar with this argument. We've taken you past where you wanted to be. Why don't you sit down for a moment, we'll hear from the other side, and then we'll give you a chance. Thank you, but if I may make really quickly, because I did mention it in passing, we do have an evidentiary error claim, you know, as to the questions that were asked as to the potential lethal use of tasers. And while I couched it in the context of this explains why the jury may have made a decision against Officer Parker as opposed to Officer Kogler, it's not dependent on that. The bottom line is, here were questions of a significant nature, given, as your honors have pointed out, the issue here is whether the force used was excessive. Frankly, I think that's a very plausible explanation for why the jury distinguished between the two. That doesn't necessarily mean the evidentiary ruling was an abuse of discretion. Well, given that there was literally no evidence put on before or after to support the assertion that there were deaths, I contend it is an evidentiary, because it suggested to the jury that the taser had a different level of force than what Officer Parker had explicitly testified to. He had testified to his personal experience with the taser and its minimal level of impact on a person. And here was this suggestion that, no, Officer Parker is, you know, soft peddling this thing. It's actually a lethal weapon. Well, if Officer Parker is an authority on the taser, why can't he be asked, do these things have potential lethal consequences? Well, there's two aspects to that. First of all, he never testified as an expert. He testified from his personal experience. Well, I mean, but he's saying you can use these things and we can use them because they're safe. And so why can't he then be cross-examined about whether they really are safe or not? Because the questions that were asked are the legal equivalent of when did you stop beating your wife? They presume that these deaths occurred. And his testimony was he had no personal knowledge. It's one thing to test his knowledge. Officer Parker, are you aware of whether or not there have been more severe injuries? Are you aware of the potential scope of injuries? No, and that explains why he thought it was okay to use it under these circumstances. If he thought it would do permanent or fatal damage, he wouldn't have used it. But he wasn't asked the question that I just presented. He was specifically asked, are you not aware of the fact that there have been deaths from use by the taser by Escondido? That there have been deaths from the use in other departments? There was a specific implication of actual fact in those questions. It wasn't simply testing the breadth of his knowledge. It was suggesting to the jury that there were, in fact, there was, in fact, information that contradicted his testimony. They were leading questions. But they were leading it without any foundation, without any suggestion of... Well, they were leading with some suggestion. You don't deny, for example, in any argument that I've seen, that in fact there was a taser death in Escondido. I frankly have no idea. It wasn't an issue. Well, the only reason you have no idea is you didn't look. If you'd looked and you found out there was no such thing, my guess is you would be telling us here. And to ask an officer, has there been a taser death in a nearby police department in the recent past, I think that's within the fair boundary of questioning. And if he says, I don't know, or I don't believe everything I read in the newspapers, which is what he said, the jury's entitled to say, hmm, that sounds like an evasive answer. Good morning, Your Honor. I am happy to address any... Please identify yourself for the record. Forgive me, Your Honor. James Dunn, on behalf of the Appalachian Cross Appellant. Thank you. Well, Your Honor, I'm very encouraged by the questioning in the sense that what we are... We can be an equal opportunity abuser. So have at me. But what I think we do have here is an attempt by the appellant, in zealous representation of their client, to invade the proper province of the jury. The jury certainly had more than substantial evidence to find that, and I think cutting right to the chase, I just don't see, under any argument, how the second taser shot cannot be seen as substantial evidence in support of the verdict, because there we have Mr. Wakefield's testimony that he's not resisting, he is asking not to be shot again, and nonetheless, Officer Parker tasers him the second time. I think that the way to reconcile these verdicts is that the jury believed Mr. Wakefield, who was, again, not a criminal that was being subdued by the police to be arrested, but somebody who was rear-ended in a car accident, and that, I think, is an important fact to consider when evaluating the appropriateness of the force to be used. I believe all of the issues, such as the right to refuse medical treatment, have been raised by the court, and I'd be happy to address any further concerns or questions on that point. The fact is that one of the paramedics testified that the taser is clearly a very painful experience. Officer Parker testified that it is clearly a very painful experience. In fact, his description is that it's like your whole body experiencing a cramp. And that was his soft peddling of the effect of the taser. With regard to my questioning on his awareness of other incidents with the taser, it was directly in response to his testimony about the harmless nature of the taser, and I am all too often reminded that what counsel says is not evidence, and so it was actually his responses that the jury considered as the evidence in the case and not the questions. Well, there is a point at which questioning can't be justified, because questioning is a way to communicate information to the jury, because later you can't be sure exactly was it a question or an answer or where the impression come from. You acknowledge there are limitations. The court can impose limitations on questions to be had. Absolutely, Your Honor. Make sure I get the procedural posture. When the question was asked, there was an objection at that time, is that right? Yes, I believe I have the excerpt. Yes, and was there ever any subsequent request to strike after the insinuation was not proved up, anything like that? No, there wasn't, and in fact, the officer's answers are, the officer answered the questions. He was aware of only two deaths, I believe. He was aware of the incident in Escondido. I'm looking in page 75 of the excerpt of record. And on page 76, the witness says, the only thing I have done, I have nothing to do with what happened. I've read the papers, but I do not believe everything. Sorry, I don't believe everything I read in the papers. The media sometimes says things that they kind of blow out of proportion, and I have no, I mean, I have no, I guess, KNOW knowledge of the incident, but I have no, no, no, forgive me, I misread, I know of the incident, but I have no knowledge. We both have it in front of us. And, as I recall, there was nothing raised after that point to address that specific. I mean, then we get an objection. Objection, Your Honor, lacks personal knowledge. Court overruled. If you know, witness then says, that's correct. He doesn't say, I don't know. He says, that's correct. Right. And that was a taser deployed by your police department? Correct. And I just think that, I try to argue as best as I can with the help of Patrick Condon, who is my co-counsel on this, that if they are general verdicts, then there is, then they should not be set aside. Okay. Do you want to address the question, which is your cross-appeal, which is to say summary judgment on the punitive damages point? Yes, Your Honor. I feel that the record that the court has reviewed shows substantial evidence to support a factual finding that Officer Parker was recklessly indifferent when he fired the taser. How different is the standard for getting past a defense of qualified immunity and the standard that would allow imposition of punitive damages? That is to say, the standard for getting past qualified immunity is pretty high already. Yes. How much higher is the standard for punitive damages? That's an insightful question, Your Honor, which I'm, my wheels are spinning. I don't think there would be any, I don't think it would be a higher standard. I think it has to be a higher standard or we would find automatically that every time there's an overriding of the qualified immunity defense, you're automatically entitled to punitives. I see, Your Honor. Well, the way I understand the difference there is the difference between intentional versus... Oh, I see. Okay. Because qualified immunity is objective rather than specific to the individuals in Tampa. Yes, Your Honor. But with regard to the cross-appeal, Your Honor, I think there is substantial factual... Did you run through that then? Because it really is going to be a question. So what testimony, just to recount briefly, what's the testimony in the record that would support an award of punitives? Yes, Your Honor. That would be the testimony, I would point the Court directly to the testimony between the first and second tasing where Mr. Wakefield states that he is not resisting and he is asking, begging, not to be shot again. And Officer Parker, his testimony is in direct contradiction, but I think we have the jury favoring Mr. Wakefield's view, and he fires the taser a second time. And that, I think, is sufficient there to ask the judge to review as the finder of fact whether or not punitive damages are appropriate. And what the judge did was to say, as a matter of law, no punitive, so the jury doesn't get to address the question. That's right. And we stipulated that she would be the fact finder. Let me pick up on that. I'm confused there, because I saw that in your reply where you tried to figure out... Now, it's clear, at least the form of her disposition was in granting the Rule 50 motion, which fits all the arguments so far. And then you mention in the brief and mention now, you stipulated let her simply decide as the finder of fact. You're not asking us to review that as a finding of fact. No, exactly. So what happened with the stipulation? Why didn't the Court decide, okay, if you're giving it to me, I decide, no punitive damages, end of story? I don't have an answer for you, Your Honor. I mean, if it goes back, does it go back to her as the finder of fact? I think one of the first issues we have to address is whether or not that stipulation would obtain on remand. But it may. Why wouldn't it? I mean, you said, listen, she gets to decide it. Now, she could have decided against you based upon matter of law, which she did. Or if she'd said, you know, okay, it's in front of me, I don't decide as a matter of law, but I'm the fact finder, I'm entitled to say no. So she says no. And if it goes back to her, I suspect she's going to say no again. Although if it goes back to her saying you can't do it on summary judgment, she'll say, okay, it's not summary judgment. I now find as a matter of fact, as the fact finder, no. And she may, Your Honor. I think she will. I don't have an answer for you. Well, she may have. I mean, in fairness to her, she may have thought that as a matter of law, you're not entitled to them. But if she's told that the law is wrong, she might conclude that you are entitled. Thank you very much, Your Honor. Well, wonders never cease. Well, I was going to say at the beginning, but I think it's even more appropriate now that I always learn something, whether I'm reading one of your erudite opinions or enjoying the comedy and hospitality of the court. Well, okay. Anything further? No, Your Honor. Okay. Thank you, Your Honor. And I'll be very brief. I'm basically just going to respond to the cross-reply, the cross-appeal, but I do want to comment that my representations as to the testimony of Officer Parker regarding the prior incidents, I didn't express myself well, because when you look at the actual testimony, he does not indicate any knowledge that the use of the taser caused the death. And that was the implication, as we put it in the question. Not that he didn't know that somebody died in connection, but not that there's necessarily a link, which is what makes it a lethal weapon. And so to the extent I made that unclear and suggested it was a more definitive statement than it was, I do apologize. But turning to the cross-appeal, I think there's quickly two statements. In terms of the stipulation, I don't believe that it's really possible for the judge to come to a different factual conclusion, because her legal conclusion was there was insufficient evidence to support punies. Well, if she believed that they were insufficient as a matter of law to support punitive damages, then obviously she didn't believe that they were personally persuasive. So I do believe setting it back for her to decide would simply be a matter of her, okay, it's fact, not law. And I would just respond to the comment. It is a different standard and a higher standard. Qualified immunity does not apply when somebody is incompetent, as the language floats around. They make a mistake, they misread what's going on. All of the basis on which liability can be found, but that's a different level than rising to reckless indifference. There's certainly no evidence that Officer Parker was deliberately malicious or callous here, and even counsel has not argued that. It's been an argument of recklessness. And I don't believe that the evidence supports that his conduct rose to that level. His conduct, certainly the jury believed, and this panel certainly seems to believe, was wrong and an inappropriate response to the situation faced, but I don't believe the evidence supports a finding that he was so wrong as to be beyond anybody's even mistaken belief that it could be appropriate. And let me be clear. I don't necessarily believe that your client's reaction was excessive. I think it's utterly logical to believe that Taser tagged your client as the bad guy for lots of reasons, including things that happen outside of court. I'm just saying our job is to deal with the jury verdict. I agree. So to the extent that it affects your client, we're not professing and passing judgment on you. And I understand, and I say that more in the context of the distinction between how the court might rule on the appeal versus the cross-appeal, that they are two different issues, and that fact that there's nothing that, whether we might view it as excessive on our own outside of the jury, does have some sort of impact on how we look at the cross-appeal decision. Well, but it's the same question, and I agree with Judge Clifton. It's not what we believe. It's what a fact finder could believe, based upon the evidence. And that's where I tried very valiantly. Let me ask you a question, and I want to emphasize that your answer to the question, if you even know the answer to the question, has no bearing on my decision in this case. It's rather a matter of curiosity. I teach some of this stuff in an abstract way, qualified immunity and so on, and I've read in the academic literature, particularly by Dean Jeffries at the University of Virginia, who does a lot of teaching of police officers and so on, and asks this question repeatedly. Dean Jeffries says that in talking to police officers, the uniform answer he gets to this question, when officers are sued successfully for qualified immunity, that the officers themselves don't, in fact, pay the judgment, but that it tends to be the employer paying for it. Do you know, in this case, what the policy will be? Do you know whether, in fact, Officer Parker will pay this out of his own funds? And I emphasize again, if it's privileged information, you need not tell me that, and it has no bearing on how I will decide this case. The really simple answer is I don't know. We are now in recess until tomorrow morning. Thank you very much. We are now finished for the morning. All rise. The session is adjourned.
judges: Silverman, W. Fletcher, Clifton